**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA for the use and benefit of HAJOCA CORPORATION, a Maine corporation d.b.a. Kelly's Pipe & Supply and d.b.a. Kennan Supply,<br><br>    Plaintiff,<br><br>vs.<br><br>ASSOCIATED MECHANICAL, INC., a Nevada corporation; AMERIND BUILDERS, LLC, an Arizona corporation; E. C. SCARBOROUGH, an individual surety,<br><br>    Defendants. | 2:09-cv-02087-ECR-PAL<br><br>**<u>Order</u>** |

    This case involves a supplier to a public project alleging breach of contract, unjust enrichment, and claims on a payment bond for materials supplied and not paid-for in full. Now pending are a motion for summary judgment (#25) filed by Plaintiff and a cross-motion for summary judgment (#29) filed by Defendants Amerind Builders, LLC ("Amerind") and E. C. Scarborough ("Scarborough").

    The motions are ripe, and we now rule on them.

**<u>I. Factual and Procedural Background</u>**

    Plaintiff Hajoca Corporation d.b.a. Kelly's Pipe & Supply and d.b.a. Keenan Supply ("Hajoca") is a Maine corporation doing

business in Clark County, Nevada, selling plumbing goods and materials. (Am. Compl. ¶ 4 (#10).) Defendant Amerind Builders, LLC ("Amerind") is an Arizona corporation doing business in Clark County, Nevada as a licensed contractor and the prime contractor on the project known as Bldg. B718 and Bldg. B707/Contract No. FA4861-07-C-A027 located on Creech Air Force Base in Indiana Springs, Nevada ("the Project"). (Id. ¶ 5.) Defendant Associated Mechanical, Inc. ("Associated") is a Nevada corporation doing business in Clark County, Nevada as a licensed contractor and as a subcontractor to Amerind on the Project. (Id. ¶ 6.) Defendant E. C. Scarborough ("Scarborough") is an individual residing in Florida and conducting business in Clark County, Nevada as an individual surety at all times material to this case. (Id. ¶ 7.)

On or about September 30, 2007, the United States Air Force awarded a contract to Amerind to provide materials, labor, equipment and other work required to provide repairs and upgrades to buildings at Creech Air Force Base, herein known as "the Project". (Ds' Opp. to Mot. for Summary Judgment at 2 (#28).) Amerind subcontracted part of the work to Associated. (Id.)

On or about November 14, 2007, Scarborough, in exchange for a bond fee, issued payment and performance bonds for and in support of the government contract for the Project. (Id.) The only bond at issue here is the payment bond number AMERINDPP1114007 ("the Bond"). The total penal sum of both bonds was $1,028,422.00 and Scarborough pledged assets in the total amount of $1,028,422.00 by means of a Certificate of Pledged Assets ("Certificate"). (Id.) The Certificate was incorporated into the Bond and stated an effective

2

date of November 14, 2007, until either completion of the Project or twelve (12) months, whichever occurred first. (Id.)  No request to extend the Bond or Certificate was made. (Id. at 3.)  The Project is still open and ongoing. (Id. at 9.)

On November 1, 2000, and again on January 27, 2009, Associated entered into a contract with Hajoca, wherein it was agreed that Associated would pay for materials provided by Hajoca for various projects. (P's Mot. for Summary Judgment at 2 (#25); Exhibit 1, P's Mot. for Summary Judgment (#25-1).)  On January 21, 2009, Amerind, Associated, and Hajoca entered into a joint-check agreement wherein Amerind would issue joint checks to Associated and Hajoca. (Exhibit 9, P's Mot. for Summary Judgment (#25-3).)

On February 3 and 6, 2009, Hajoca sent preliminary notices to Amerind on behalf of Kelly's and Keenan, respectively. (Exhibit 4, P's Mot. for Summary Judgment (#25-1).)  Between January 30, 2009 and February 16, 2009, Hajoca caused plumbing materials to be delivered to the Creech Air Force Base in Nevada for the Project. (Exhibits 5 and 6, P's Mot. for Summary Judgment (#25-2).)  Between January 30, 2009 and February 16, 2009, Hajoca invoiced Associated $28,673.68 for the plumbing materials delivered, $25,363.80 as to Keenan and $3,309.88 as to Kelly's, for which $13,807.39 has been paid by Scarborough, of which $13,004.60 went to Keenan and $802.78 to Kelly's, leaving a balance of $14,866.29. (P's Mot. for Summary Judgment at 3 (#25), Exhibit 6, P's Mot. for Summary Judgment (#25-2).)

On May 12, 2009, Hajoca sent its 90-day notice of nonpayment for the $14,866.29 past due and owing to Amerind and Scarborough.

3

(Exhibit 7, P's Mot. for Summary Judgment (#25-3.)) Hajoca has not been paid the remaining balance on the invoices.  (P's Mot. for Summary Judgment at 3 (#25).)

On October 29, 2009, Hajoca filed its original complaint (#1) in this court.  On November 13, 2009, Hajoca filed an amended complaint (#10), alleging (1) breach of contract against Associated, (2) a payment bond claim against all defendants, (3) a cause of action for materials furnished against Associated, (4) a cause of action on account stated against Associated, and (5) an unjust enrichment claim against Associated and Amerind.  On December 14, 2009, Amerind and Scarborough filed their answer (#13) to the amended complaint (#10).  On December 21, 2009, Hajoca filed a motion for default (#14) against Associated.  On December 22, 2009, the Clerk entered a default (#15) against Associated.

On June 7, 2010, Hajoca filed a motion for summary judgment (#25) against Amerind and Scarborough for Hajoca's second and fifth causes of action.  Amerind and Scarborough opposed (#28), and Hajoca replied (#30).  Amerind and Scarborough filed a cross-motion for summary judgment (#29), Hajoca opposed (#31), and Amerind and Scarborough replied (#32).

## II. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists.  N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84

4

F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue

for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. Summary judgment is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

### III. Discussion

Hajoca seeks partial summary judgment on its claims, alleging that there are no genuine issues of material fact with respect to its payment bond claim and unjust enrichment claim. In response, Amerind and Scarborough oppose Hajoca's motion for summary judgment, and seek summary judgment against Hajoca on the payment bond and unjust enrichment claims.

**A. Payment Bond**

Suppliers for federal projects are protected by the Miller Act. 40 U.S.C. § 3133. The Miller Act "requires a prime contractor of a federal project to furnish a payment bond to insure payments to

6

individuals who supply labor and/or materials for federal projects." United States *ex rel.* Conveyor Rental & Sales Co. v. Aetna Cas. & Surety Co., 981 F.2d 448, 450 (9th Cir. 1992).  A payment bond protects "those persons who have a contractual agreement with a prime contractor or subcontractor engaged in a federal project." Id.  The Miller Act "is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." United States *ex rel.* Sherman v. Carter, 353 U.S. 210, 216 (U.S. 1957).

  The Miller Act provides that "[b]efore any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government [payment and performance] bonds, which become binding when the contract is awarded . . . ." 40 U.S.C. § 3131(b).  It further provides that "[a] person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made."  40 U.S.C. § 3133(b)(2).  The Miller Act requires that the civil action "must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." 40 U.S.C. § 3133(b)(2).

7

In this case, Hajoca has satisfied the requirements for bringing a civil action on the payment bond by providing timely written notice to Amerind, and by stating the amount due and providing documentation thereof. Defendants, however, have not complied with the requirements of the Miller Act with regards to the necessary payment bond.

The Bond was issued on its effective date of November 14, 2007. The terms of the Bond read that the "Bond is not valid without Certificate of Pledged Assets." (Payment Bond, P's Mot. for Summary Judgment, Exhibit 3 (#25-1).) The Certificate of Pledged Assets pledged certain assets, and referenced the Project, contract number, and Principal (Amerind). The Certificate of Pleged Assets provided that the pledge agreement shall be terminated "[u]pon completion of the Project but not to exceed twelve (12) months . . . ." (Id.) The Project was not completed within twelve months from the effective date of the Bond, and is in fact still open and ongoing. Amerind alleges that the United States Air Force is responsible for the majority of the delays and disruptions experienced on the Project. Neither Amerind nor the obligee of the bond, the United States Air Force, procured an extension of the Bond beyond the twelve-month period beginning on November 14, 2007. Therefore, according to the terms of the Bond, the Bond and the Certificate of Pledged Assets expired on November 14, 2008. Hajoca furnished supplies to the Project in 2009, outside of the projected period that the Bond purports to cover.

The Miller Act requires that a contractor furnish a payment bond to the Government. Scarborough issued a year-long bond in

8

exchange for a bond fee, and the bond was never extended, nor was any additional payment made.

The District Court for the District of Columbia addressed a similar issue. United States *ex rel.* Modern Electric, Inc. v. Ideal Elec. Sec. Co., Inc., 868 F.Supp. 10, 14 (D.D.C. 1994). In Modern Electric, the payment bond and the underlying contract both indicated that the payment bond only covered the first year of the public project, and that a new payment bond would be required if the government extended the contract. Id. The Modern Electric court held that the claim against the payment bond must be dismissed because the payment bond expired after the first year, and plaintiff's claims related to work performed after the first year. Id. at 15. The court noted that the prime contractor or the government may have breached obligations under the Miller Act by failing to provide a bond in the subsequent years of the project, but that was not a reason to "impose an obligation on [the surety] that it did not undertake to bear and for which it apparently collected no premiums." Id. at 14.

We agree with the Modern Electric court that regardless of any fault on the part of Amerind or the government in this case to extend the payment bond, we cannot hold Scarborough to an obligation it did not undertake or receive compensation for. Therefore, Hajoca's motion for summary judgment on its payment bond claim must be denied, and Defendants' cross-motion as to the payment bond must be granted.

///

///

9

**B. Unjust Enrichment**

Hajoca also seeks summary judgment on its claim of unjust enrichment against Amerind. The doctrine of unjust enrichment or recovery in quasi contract applies in situations "where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." Leasepartners Corp. v. Robert L. Brooks Trust, 942 P.2d 182, 187 (Nev. 1997). "The essential elements of quasi contract are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." Unionamerica Mortgage and Equity Trust v. McDonald, 626 P.2d 1272, 1273 (Nev. 1981) (quoting Dass v. Epplen, 424 P.2d 779, 780 (Colo. 1967).

In this case, Amerind acknowledges that there is no express contract between Amerind and Hajoca, but contends that unjust enrichment does not apply because (1) there is a contract between Hajoca and Associated from which Hajoca should, according to Amerind, recover any damages, (2) Amerind is an incidental beneficiary of the contract between Hajoca and Associated, (3) the transaction here falls under the allegedly exclusive remedies of the Nevada Uniform Commercial Code, and (4) there are disputes as to the value of the materials provided and Amerind was not benefitted in any case.

### 1. Contract Between Hajoca and Associated

We do not agree with Amerind that the contract between Hajoca and Associated bars Hajoca from bringing an unjust enrichment claim against Amerind, with whom it has no contractual relationship.  In Leasepartners, plaintiff provided signs pursuant to a lease to defendant lessee, who leased property from defendant lessor for which the signs were used.  942 P.2d at 183-84.  The Nevada Supreme Court held that the contract between plaintiff and the lessee did not prevent an unjust enrichment claim by plaintiff against the lessor.

Amerind's argument that it is an incidental beneficiary of the contract between Hajoca and Associated, and therefore cannot be sued on a theory of unjust enrichment, is also unpersuasive.  In Leasepartners, plaintiff argued that it conferred a benefit on defendant lessor by providing newer, more attractive signs than the old signs previously displayed on the property.  While the Nevada Supreme Court did not expressly consider any arguments relating to incidental beneficiaries, the holding in that case that the defendant lessor could be sued on a theory of unjust enrichment is nevertheless relevant and applicable to Amerind's argument.  The defendant lessor is no less of an incidental beneficiary to the plaintiff and lessee's contract that Amerind was here.

Nor does Washington law, which does not control in this case, require a different result. Amerind cites Bort v. Parker for the contention that unjust enrichment cannot apply to a "mere incidental beneficiary of the transaction."  42 P.3d 980, 991 (Wash. Ct. App. 2002) (citing Farwest Steel Corp. v. Mainline Medal Works, Inc., 741

11

P.2d 58, 64-65 (Wash. Ct. App. 1987).  <u>Farsteel</u> is favorable to Amerind's position in holding that a supplier does not unjustly enrich a contractor from whom it is one step removed because the contractor "did not mislead [the supplier] in any fashion" despite being enriched by receiving but not paying fully for goods supplied by the supplier.  <u>Id.</u> at 65.  The reasoning in <u>Farsteel</u> does not, however, persuade us that Hajoca's unjust enrichment claim must be dismissed.  The court in <u>Farsteel</u> was dealing with Washington State's mechanic's lien statutes, and not with the Miller Act.  <u>Id.</u> at 63.  The <u>Farsteel</u> court noted that "a materialman of a materialman of a contractor has too remote a relationship to fall within the [Washington] lien statutes."  <u>Id.</u>  Under the Miller Act, a supplier to a federal project is entitled to protection in the form of a payment bond that a prime contractor is required to provide.  We conclude, for the purposes of this order, that Amerind may have breached its obligation under the Miller Act to provide that bond.  In doing so, Amerind may have misled Hajoca, and may be liable for unjust enrichment.  Nor is a breach of the Miller Act required for a finding of unjust enrichment.  If Amerind retains materials supplied by Hajoca and is enriched thereby, without furnishing payment, either to Hajoca or Associated, Amerind may have been unjustly enriched by Hajoca.

     2. Nevada's Uniform Commercial Code

    Nor do we find Amerind's arguments that Article 2 of Nevada's Uniform Commercial Code ("UCC") provides the exclusive remedy in this case persuasive.  Nevada's UCC provides that Article 2 "applies to transactions in goods."  Nev. Rev. Stat. § 104.2102.  Amerind does

12

not provide any authority that an unjust enrichment claim by a supplier to a contractor is barred by the Uniform Commercial Code, nor have we found any such authority.  Therefore, Amerind's argument that Hajoca's claim of unjust enrichment must be dismissed on this basis fails.

### 3. Dispute Over Value of Materials

Amerind claims that not all the materials provided by Hajoca were used in the Project, and that the materials were not worth $14,866.29.  Amerind has not provided any evidence, however, aside from vague statements made in an affidavit that Hajoca has "failed to provide evidence to Amerind that the items claimed for were actually delivered to the Project."  (Rashleger Decl. Ds' Opp. to Mot. for Summary Judgment (#28).)  Hajoca, on the other hand, has provided detailed invoices and shipping notices.

We cannot, however, find that Hajoca is entitled to summary judgment on its unjust enrichment claim.  If we were considering a breach of contract claim against Associated or the bond claim against Scarborough, the invoiced amount may have appropriately been awarded.  In an unjust enrichment case, however, the measure of damages is the benefit conferred upon Amerind, which may or may not coincide with the invoiced amount.  Nor has there been sufficient evidence presented that the materials were used on the Project and thereby benefitted Amerind.  Therefore, we find that there is a material dispute regarding the benefit conferred on Amerind and summary judgment on the unjust enrichment claim shall be denied.

///

///

13

### IV. Conclusion

Hajoca's claim against the payment bond must be dismissed because the payment bond expired twelve months after its effective date, and before Hajoca provided Defendants with supplies for which payment is being sought.  Hajoca's unjust enrichment claim, however, is not barred by the existence of a contract between Hajoca and Associated, or the Uniform Commercial Code.  Summary judgment in favor of Hajoca on the unjust enrichment claim is not warranted because there is a material dispute over the amount, if any, of the benefit conferred on Amerind.

**IT IS, THEREFORE, HEREBY ORDERED** that Hajoca's motion for summary judgment (#25) is **DENIED**.

**IT IS FURTHER ORDERED** that Amerind and Scarborough's cross-motion for summary judgment (#29) is **GRANTED IN PART and DENIED IN PART** on the following basis: **GRANTED** as to the payment bond claim, and **DENIED** as to the unjust enrichment claim.

The action having been dismissed as to E. C. Scarborough with respect to the payment bond claim, which is the only claim made by Plaintiff against Scarborough, the action has been concluded as to Defendant Scarborough.

DATED: February 7, 2011.

_____
UNITED STATES DISTRICT JUDGE